# IN THE DISTRICT COURT OF THE UNITED STATES
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION

## CIVIL CASE NO. 3:06cv445

| | | |
|---|---|---|
| B.P., a minor, by his legal guardians and next friends, LESLIE and TREVOR PETRUK, and LESLIE and TREVOR PETRUK, individually, | ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | **MEMORANDUM OF DECISION AND ORDER** |
| CHARLOTTE-MECKLENBURG BOARD OF EDUCATION, | ) ) ) | |
| Defendant. | ) ) ) | |

**THIS MATTER** is before the Court on the Plaintiffs' Motion for Attorney's Fees and Costs [Doc. 20] and for a final determination of the award to the Plaintiffs as the prevailing parties in this matter. The Court held a hearing on these issues on February 23, 2010.

## I.     PROCEDURAL BACKGROUND

The Plaintiffs Leslie and Trevor Petruk, individually and as the legal guardians and next friends of their minor child B.P., initiated this action on

October 26, 2006, seeking review of a state administrative decision in a special education case pursuant to the Individuals with Disabilities Education Act, 20 U.S.C. § 1400, et seq. (1997) ("IDEA").[1]  On October 26, 2009, the Court entered an Order, finding that the Defendant Charlotte-Mecklenburg Board of Education ("CMS") failed to provide B.P. a free appropriate public education ("FAPE") during the 2004-05 school year and the 2005 extended school year ("ESY").  The Court ordered CMS to reimburse the Petruks for the costs of the private preschool program in which they enrolled B.P. for the 2004-05 school year and 2005 ESY, as well as for transportation expenses for the applicable time period.  Because the Court found that the Petruks had failed to demonstrate that CMS denied B.P. a FAPE for the 2005-06 school year, the Petruks' request for reimbursement of tuition and related expenses for that year was denied. [Doc. 18 at 56].  The Petruks were directed to file their petition for attorney's fees by November 15, 2009, so that a hearing could be set to determine the final amount of the Petruks' award.  [Id. at 57].

---

[1] The IDEA was amended effective July 1, 2005 by the Individual with Disabilities Education Improvement Act of 2004, Pub. L. No. 108-46, 118 Stat. 2647 (Dec. 3, 2004) ("IDEIA").  Because the events which gave rise to this litigation occurred prior to the effective date of the IDEIA, the Court will cite only to the earlier version of the Act.  See Emery v. Roanoke City Sch. Bd., 432 F.3d 294, 297 n.1 (4th Cir. 2005).

The Petruks filed their Motion for Attorney's Fees and Costs and supporting documentation on November 13, 2009. [Doc. 20]. After receiving an extension of time to respond, CMS filed its opposition to the Petruks' Motion on December 14, 2009. [Doc. 30]. The Petruks' Reply was filed on December 23, 2009. [Doc. 31]. The parties appeared before the undersigned on February 23, 2010. Subsequent to this hearing, the Petruks' counsel submitted a Supplemental Declaration in support of the request for attorney's fees and costs. [Doc. 33].

Having been fully briefed and argued, these matters are now ripe for disposition.

## II.   DISCUSSION

### A.   Costs Related to the 2004-05 School Year and 2005 ESY

The IDEA authorizes the Court to "grant such relief as [it] determines is appropriate." 20 U.S.C. § 1415(e)(2). While the IDEA does not authorize the award of monetary damages, "courts can equitably reimburse parents for funds expended on their child's education because of the school district's failure to provide a FAPE." <u>Emery v. Roanoke City Sch. Bd.</u>, 432 F.3d 294, 298 (4th Cir. 2005).

In the present case, the Petruks seek reimbursement of the costs of the private preschool program in which they enrolled B.P. for the 2004-05 school year, the 2005 ESY, and the 2005-06 school year. The Court has determined that the Petruks are entitled to reimbursement for the private preschool tuition related to the 2004-05 school year and the 2005 ESY. The parties agree that the cost of this tuition amounts to $6,188.00.

The Court also has determined that the Petruks are entitled to reimbursement for transportation expenses incurred during the 2004-05 school year and the 2005 ESY. While the parties agree on the amount of mileage that the Petruks occurred during this time period, the parties disagree as to the applicable rate for this mileage. The Petruks argue that they should be reimbursed at the current (2010) standard mileage rate of $.50 per mile, which would result in an award of $3,384.00. CMS contends that the Court should apply the mileage rate in effect at the time that the mileage expenses were incurred, which was $.375 per mile for the period of August 2004 to December 2004 and $.40 per mile for the period of January 2005 to August 2005. Based on the mileage rates in effect during these time periods, CMS contends that the Petruks are entitled to an award of $2,658.96 for mileage reimbursement.

The Court agrees with CMS that the mileage reimbursement should be calculated using the mileage rate in effect at the time that the mileage expenses were incurred.  See, e.g., Alfaro v. Gen. Motors Corp., No. 05-cv-00645-MSK-BNB, 2007 WL 840505, at *3 n.2 (D. Colo. Mar. 19, 2007) (awarding mileage to witness at the rate in effect at time of deposition). Accordingly, the Petruks shall be awarded a total of $2,658.96 for mileage reimbursement.

### B.    Attorney's Fees

In any action or proceeding brought under the IDEA, the Court in its discretion may award reasonable attorney's fees as part of the costs to the prevailing party who is a parent of a child with a disability.  20 U.S.C. § 1415(e)(4)(B).  A party need not prevail on all claims in order to be considered a prevailing party under the IDEA.  See G ex rel. RG v. Fort Bragg Dependent Schools, 343 F.3d 295, 310 (4th Cir. 2003).  A party is "prevailing" where it can "point to a resolution of the dispute which changes the legal relationship between itself and the defendant."  Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist., 489 U.S. 782, 792, 109 S.Ct. 1486, 103 L.Ed.2d 866 (1989).

In the present case, CMS concedes, and the Court so finds, that the Petruks are "prevailing parties" within the meaning of the IDEA.  A finding that a party is a prevailing party, however, only makes the party eligible to receive an award of attorneys' fees under the IDEA; "it does not automatically entitle [the prevailing party] to recover the full amount that he spent on legal representation."  D.W. ex rel. W. v. Houston Indep. Sch. Dist., 158 F.3d 205, 209 (5th Cir. 1998).

The starting point for determining the amount of a reasonable fee is the calculation of the lodestar figure, which is "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate."  Hensley v. Eckerhart, 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983).  "If properly computed, 'the lodestar figure will normally reflect a reasonable fee.'"  JP ex rel. Peterson v. County Sch. Bd. of Hanover County, Va.,  641 F.Supp.2d 499, 512 (E.D.Va. 2009) (quoting A.D. ex rel. S.D. v. Bd. of Pub. Educ. of the City of Asheville, 99 F.Supp.2d 683, 687 (W.D.N.C. 1999)).

The determination of a reasonable attorney's fee is a matter of discretion with the Court.  See Robinson v. Equifax Info. Services, 560 F.3d 235, 243 (4th Cir. 2009).  In determining what is "reasonable," the Fourth

Circuit has instructed that a district court's discretion should be guided by the following factors, known as the "Johnson factors":

> (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

Grissom v. The Mills Corp., 549 F.3d 313, 321 (4th Cir. 2008) (applying twelve-factor test set forth in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714, 717-19 (5th Cir.1974)) (citation omitted).

After determining the lodestar amount, "the court then should subtract fees for hours spent on unsuccessful claims unrelated to successful ones." Id. (quoting Johnson v. City of Aiken, 278 F.3d 333, 337 (4th Cir. 2002)). "Once the court has subtracted the fees incurred for unsuccessful, unrelated claims, it then awards some percentage of the remaining amount, depending on the degree of success enjoyed by the plaintiff." Grissom, 549 F.3d at 321 (quoting Johnson, 278 F.3d at 337).

7

The party seeking an award of attorney's fees must submit adequate evidence detailing the hours worked and the rates claimed. <u>Hensley</u>, 461 U.S. at 433, 103 S.Ct. 1933. "Where the attorney's documentation is inadequate, or the claimed hours are duplicative or excessive, the court may reduce the award accordingly." <u>Neves v. Neves</u>, 637 F.Supp.2d 322, 340 (W.D.N.C. 2009). "The goal is to not overcompensate counsel with a 'liberal' fee, but to award the 'reasonable' fee necessary to encourage competent lawyers to undertake the representation." <u>Id.</u> (citation omitted).

### 1. Reasonable Hours Expended

In the present case, the Petruks seek an award of attorney's fees based upon a total of 198.4 hours of legal services and 41.3 hours of travel time related to the handling of the due process case, the NCDPI appeal, the present appeal, and filing of the attorney's fees motion by their counsel, Stacey B. Bawtinhimer.[2] Ms. Bawtinhimer is licensed in the States of North Carolina and Georgia, and is an attorney in good standing with the North Carolina and Georgia Supreme Courts, the North Carolina Court of Appeals, each of the federal district courts of North Carolina, the Fourth

---

[2]The Petruks have reduced the amount of hours claimed for legal services by 10.3 hours in response to CMS's objection. [<u>See</u> Doc. 33-2 at 1]. With this reduction, CMS has no objection to the amount of hours claimed. [<u>See</u> Doc. 30 at 7].

Circuit Court of Appeals, and the United States Supreme Court. [Declaration of Stacey B. Bawtinhimer ("Bawtinhimer Decl."), Doc. 22 at ¶2]. She has practiced law for nineteen years, has been representing disabled students for over fifteen years, and has been exclusively practicing special education/education law on behalf of disabled students for over ten of those years. [Id. at ¶3]. To her knowledge, Ms. Bawtinhimer is the only private-practice attorney who exclusively practices special education law. [Id. at ¶4]. Ms. Bawtinhimer is active in the North Carolina Bar Association, as well as various groups involved in the promotion of the rights of disabled children. [Id. at ¶ 5]. She has taught courses on special education law for the North Carolina Bar, Campbell University School of Education, and Wake Forest University Neuropsychology Department. [Id. at ¶ 6].

In support of the Petruks' claim for attorney's fees, Ms. Bawtinhimer has submitted two declarations, supported by detailed billing records. [Bawtinhimer Decl., Doc. 22; Supplemental Declaration of Stacey B. Bawtinhimer ("Bawtinhimer Supp. Decl."), Doc. 33]. As previously noted, CMS does not dispute the reasonableness of the hours expended by the Petruks' counsel in this matter. [Doc. 30 at 7]. Upon careful review of Ms.

Bawtinhimer's billing records and declarations, the Court is satisfied that the 199.8 hours for legal services plus 41.3 hours for travel time were reasonably expended in furtherance of this litigation.

## 2. Reasonable Hourly Rate

The IDEA requires that any award of attorney's fees must be "based on rates prevailing in the community in which the action or proceeding arose for the kind and quality of services furnished." 20 U.S.C. § 1415(e)(4)(C). In the present case, the Petruks seek an award of attorney's fees based upon an hourly rate of $350 per hour for legal services and $100 per hour for travel. [See Docs. 22, 33]. CMS objects to the Petruks' request for a fee of $350.00 per hour as excessive. [Doc. 30 at 7].

In her Declaration submitted in support of the Petruks' claim for attorney's fees, Ms. Bawtinhimer states that when she was retained by the Petruks in 2006, they entered into a Retainer Agreement by which the Petruks agreed to pay her $175.00 per hour for attorney's fees and a reduced rate of $50.00 per hour for travel time plus mileage. [Bawtinhimer Decl., Doc. 22 at ¶9]. This Retainer Agreement also stated: "If applicable, Client understands and agrees that the Firm will, if successful, apply to

federal court for a further fee award, beyond the fee the Client has agreed to pay." [Id. at ¶ 10]. Ms. Bawtinhimer explained that she included this type of provision in all of her retainer agreements so that she could seek reimbursement at the current community hourly rate and because "few parents can afford to pay $175.00 per hour and at some point all of my cases become a contingency fee." [Id. at ¶¶ 11, 12].

Ms. Bawtinhimer asserts that an appropriate hourly rate for her legal services is $350.00 per hour, with a proportionately reduced travel rate of $100.00 per hour. [Id. at ¶¶28, 30]. In further support of this claimed hourly rate, the Petruks submit the affidavits of Phillip R. Dixon, Brett Loftis, Edward G. Connette, and Connie Hawkins. [Docs. 24, 25, 26, 27]. Phillip Dixon is an attorney in Greenville, North Carolina, and has been retained as a school board attorney for over twenty-one local school boards and six community colleges. [Declaration of Phillip R. Dixon ("Dixon Decl."), Doc. 24 at ¶¶1, 3]. Mr. Dixon states he has known Ms. Bawtinhimer since 1997 and knows her to be extremely knowledgeable about special education law. [Id. at ¶¶7, 10]. Mr. Dixon further states that as a school board attorney, he charges "non-retainer" school board clients in Eastern North Carolina $300.00 per hour for his services, and that Mr. Dixon's colleagues

in Charlotte, North Carolina, who practice administrative and federal law charge over $350.00 per hour.  [Id. at ¶¶13, 15].  Mr. Dixon opines that based on the limited number of private attorneys who practice special education law, Ms. Bawtinhimer's experience and expertise, and the community rate in Charlotte, North Carolina, a reasonable rate for Ms. Bawtinhimer's legal services would be $350.00 per hour.  [Id. at ¶16].

Brett Loftis is an attorney and the Executive Director of the Council for Children's Rights in Charlotte, North Carolina.  [Affidavit of Brett Loftis ("Loftis Aff."), Doc. 25 at ¶1].  Mr. Loftis is familiar with Ms. Bawtinhimer's experience and abilities, and to his knowledge she is the only private attorney in North Carolina exclusively practicing in the area of special education law.  [Id. at ¶¶3-5].  In Mr. Loftis's opinion, an hourly rate of $250.00 for Ms. Bawtinhimer is reasonable given her level of experience and expertise and well within the prevailing rates for attorneys with similar experience and abilities in Charlotte, North Carolina.  [Id. at ¶ 6].

Edward Connette is a partner with Essex Richards P.A. in Charlotte, North Carolina.  [Declaration of Edward G. Connette ("Connette Decl."), Doc. 26 at ¶1].  He practices almost exclusively civil litigation, both at trial and on appeal.  [Id. at ¶3].  Mr. Connette states that he is familiar with Ms.

Bawtinhimer's work, because so few attorneys in North Carolina are willing to litigate special education cases, and that given her knowledge, skill, experience, and years of education, a rate of $300 to $350 per hour for routine, non-contingent work would be well within the prevailing rates for similar attorneys practicing law in the Charlotte area. [Id. at ¶¶6, 7]. For the specialized practice area involved in this case, Mr. Connette states that an hourly rate of $350 to $450 would be appropriate. [Id.].

Connie Hawkins is the Executive Director of the Exceptional Children's Assistance Center in Davidson, North Carolina. [Declaration of Connie Hawkins ("Hawkins Decl."), Doc. 27 at ¶1]. She has worked with Ms. Bawtinhimer in representing students with disabilities for over fifteen years, and she believes Ms. Bawtinhimer to be the most experienced attorney in North Carolina representing families in special education cases and the only private practice attorney to exclusively practice special education law. [Id. at ¶2].

In response, CMS submits the affidavits of Ann L. Majestic, Jill R. Wilson, and Christopher Z. Campbell [Docs. 30-1, 30-2, 30-3]. Ann Majestic is a partner with the law firm of Tharrington Smith, L.L.P, in Raleigh, North Carolina. [Affidavit of Ann L. Majestic ("Majestic Aff."), Doc.

30-1 at ¶2].  She has practiced for twenty-seven years in the area of education law, with a special emphasis in special education.  [Id. at ¶¶2-4]. Ms. Majestic regularly deals with attorneys who practice in the area of special education, and she is familiar with the rates charged by attorneys in Mecklenburg County in this practice area.  [Id. at ¶6].  She has never known an attorney practicing in the area of special education, whether representing parents or school boards, who has charged an hourly rate of $350.00 in North Carolina.  [Id.].  Ms. Majestic's own billing rates from 2006 to the present range from $160 to $175 for retainer clients and $210 to $245 for non-retainer clients.  [Id. at ¶7].

Jill Wilson is a partner with the law firm of Brooks, Pierce, McLendon, Humphrey, & Leonard, L.L.P., in Greensboro, North Carolina.  [Affidavit of Jill R. Wilson ("Wilson Aff."), Doc. 30-2 at ¶2].  She has practiced for twenty-seven years in the area of education law and has represented the Guilford County Board of Education and Rockingham Board of Education in special education matters for the past eighteen years.  [Id. at ¶3].  To Ms. Wilson's knowledge, North Carolina attorneys engaged in the practice of special education law charge between $150 and $200 per hour, depending

on their experience. Ms. Wilson currently charges between $175 and $200 to her education clients. [Id. at ¶5].

Christopher Campbell is a partner with the law firm of Campbell Shatley, P.L.L.C. in Asheville, North Carolina. [Affidavit of Christopher Z. Campbell ("Campbell Aff."), Doc. 30-3 at ¶2]. He has devoted a significant portion of his thirteen years of practice to the area of special education law and has served as counsel to various Boards of Education in North Carolina. [Id. at ¶3]. In his capacity as a school board attorney, Mr. Campbell regularly deals with attorneys who represent students and parents in special education matters. Based on his experience, attorneys in Western North Carolina have charged between $150 and $225 per hour, depending upon their experience, for representation of students and parents in such matters. Mr. Campbell is not aware of any attorney who charges more than $225 per hour for special education matters. Mr. Campbell currently charges between $175 and $200 per hour to his education clients. [Id. at ¶5].

Based on the affidavits and declarations provided, and the Court's own knowledge of and experience with prevailing rates charged in the relevant community, the Court finds the requested fee of $350 per hour to

be greater than reasonable. The Court therefore will award fees at the rate of $300 per hour for legal services and $100 for travel. The Court finds that such rates are commensurate with the market rates "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." Hadix v. Johnson, 65 F.3d 532, 536 (6th Cir. 1995) (quoting Blum v. Stenson, 465 U.S. 886, 896 n.11, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984)).

Based on an hourly rate of $300 for legal services and $100 for travel, the Court calculates the lodestar amount to be $59,940.00 for legal services (199.8 hours x $300) and $4,130.00 for travel (41.3 hours x $100), for a total lodestar fee of $64,070.00.

### 3.    Reduction for Partial Success

CMS argues that the fee award should be reduced due to the Petruks' limited success on all of their claims. [Doc. 30 at 11]. The Petruks argue that their fee award should not be reduced, despite their lack of success on their claim for reimbursement for the 2005-06 school year, because (1) CMS unreasonably protracted the litigation and (2) any reduction would be disproportionate to the work performed on this one issue. [Doc. 31 at 4].

In determining a reasonable amount of attorney's fees, the Court looks not only to the lodestar amount but also to the "results obtained," especially where a plaintiff has "succeeded on only some of his claims for relief." Hensley, 461 U.S. at 434; J.D. ex rel. Davis v. Kanawha County Bd. of Educ., 571 F.3d 381, 387 (4th Cir. 2009). Indeed, of the twelve Johnson factors, "'the most critical factor' in determining the reasonableness of a fee award 'is the degree of success obtained.'" Farrar v. Hobby, 506 U.S. 103, 114, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992) (quoting Hensley, 461 U.S. at 436, 103 S.Ct. 1933). In Hensley, the Supreme Court noted that "[t]here is no precise rule or formula" for determining the amount of attorney's fees, and the Court "necessarily has discretion" in such matters. 461 U.S. at 436-37.

In the present case, there were four primary legal issues in dispute: (1) whether the sixty-day statute of limitations or two-year statute of limitations applied to the filing of the Plaintiffs' petition; (2) whether the statute of limitations had been tolled by the parties' attempt to mediate; (3) whether the IEP developed for the 2004-05 school year and 2005 ESY was appropriate; and (4) whether the IEP developed for the 2005-06 school year was appropriate. At the hearing level, Judge Elkins found that the

17

two-year statute of limitations applied, but was tolled by the parties' attempt to mediate; that the IEP developed for the 2004-05 school year and 2005 ESY was not appropriate; and that the IEP developed for the 2005-06 school year was appropriate. The State Hearing Officer reversed, finding that the sixty-day statute of limitations applied and was not tolled by the parties' attempt to mediate, and that the IEPs developed for both school years were appropriate. On appeal to this Court, the undersigned concluded that the sixty-day statute of limitations applied but was not triggered due to the lack of a final decision by CMS. In all other respects, the Court agreed with Judge Elkins's findings regarding both the 2004-05 and 2005-06 IEPs. Thus, the end result was that the Plaintiffs did not prevail on their claim for reimbursement related to the 2005-06 school year, but did prevail on the statute of limitations issues and their claim of reimbursement related to the 2004-05 school year and 2005 ESY.

Given the lack of success with regard to their claim for reimbursement for the 2005-06 school year, the Court finds that some reduction of the Petruks' fee award would be appropriate. As the vast majority of this litigation focused on the statute of limitations issue and the Petruks' claim for reimbursement for expenses related to the 2004-05

school year and 2005 ESY, however, the Court finds that the fee award should be reduced only by ten percent (10%) to account for this lack of success.  See, e.g., Bd. of Educ. of Frederick County v. I.S. ex rel. Summers, 358 F.Supp.2d 462, 466 (D. Md. 2005) (reducing attorney's fee award by 10% where disabled student lost on claim for compensatory education services but obtained the primary relief sought in administrative hearing, i.e., school district funding of private placement).

The Plaintiffs argue that no reduction of the fee award should be made because CMS unreasonably protracted the final resolution of this case.  [Doc. 21 at 14].  The Court disagrees.  First, 20 U.S.C. § 1415(e)(4)(G), which provides that an award of attorney's fees shall not reduced if the school system unreasonably protracted the final resolution of the case, only applies to reductions made pursuant to § 1415(e)(4)(F).  A reduction to reflect a plaintiff's partial success is not a type of reduction contemplated by § 1415(e)(4)(F).  Second, the Court cannot say that CMS pursued its appeal in bad faith.  CMS pursued an appeal of Judge Elkins's decision that the applicable statute of limitations, which he determined to be two years, was tolled by the parties' attempt to mediate.  On appeal, the State Hearing Review Officer agreed with CMS.  Given that the State

Hearing Review Officer found in CMS's favor, it cannot be considered bad faith or frivolous for CMS to have continued its appeal. The Petruks' argument, therefore, is without merit.

For the foregoing reasons, the Court calculates the attorney's fee award to the Petruks as follows:

| | |
|---|---|
| Legal Services (199.8 hours @ $300/hour) | $59,940.00 |
| Travel (41.3 hours @ $100/hour) | 4,130.00 |
| **Subtotal** | $64,070.00 |
| 10% reduction for limited success | (6,407.00) |
| **TOTAL ATTORNEY'S FEE AWARD** | **$57,663.00** |

The Court finds that this amount is reasonable in light of the time and labor expended by the Petruks' counsel; the complexity of the legal issues involved in this case; the specialized knowledge and skill required to properly perform the rendered legal services; the experience, reputation, ability of Ms. Bawtinhimer; and the results that she obtained on behalf of her clients.

### C.    Costs

The Petruks seek to recover costs incurred by their counsel in the amount of $2,138.71 for filing fees, postage, copying, faxes, as well as

mileage and other travel expenses incurred by their counsel during the course of this litigation. [See Docs. 22, 33]. CMS makes no objection to the Petruks' claim for these costs.

The $350.00 filing fee claimed by the Petruks is recoverable as "costs" pursuant to 28 U.S.C. § 1920 and so shall be awarded as such. While the other "costs" claimed by the Petruks' attorney are not recoverable under § 1920, they are nevertheless recoverable as part of the general attorney's fee award. "[A]ttorney's fees awards include those reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients." LeBlanc-Sternberg v. Fletcher, 143 F.3d 748, 763 (2d Cir. 1998) (quoting U.S. Football League v. Nat'l Football League, 887 F.2d 408, 416 (2d Cir.1989)); see also Harris v. Marhoefer, 24 F.3d 16, 19-20 (9th Cir.1994) (holding that plaintiff could "recover as part of the award of attorney's fees those out-of-pocket expenses that would normally be charged to a fee paying client") (citations omitted); Sexcius v. Dist. of Columbia, 839 F.Supp. 919, 927 (D.D.C.1993) ("Reasonable photocopying, postage, long distance telephone, messenger, and transportation and parking costs are customarily considered part of a 'reasonable attorney's fee.'"). The costs claimed by the Petruks' counsel appear to be those that

would normally be billed by an attorney to clients.  Upon carefully reviewing

these expenditures, the Court finds that the claimed costs are reasonable.

Accordingly, the Court will award these costs as part of the award of

attorney's fees in this case.

### D.    Interest

Finally, the Petruks seek an award of both prejudgment and post-

judgment interest in this case.

The decision to award prejudgment interest in an IDEA case is a

matter within the Court's discretion.  G ex rel. RG, 324 F.3d at 311.  In

deciding whether to award prejudgment interest, the Court must weigh the

equities in the particular case.  Moore Bros. Co. v. Brown & Root, Inc., 207

F.3d 717, 727 (4th Cir. 2000).  In so doing, "the governing principle is one

of fairness."  Mary Helen Coal Corp. v. Hudson, 235 F.3d 207, 211 (4th Cir.

2000) (citation omitted).  "The essential rationale for awarding prejudgment

interest is to ensure that an injured party is fully compensated for its loss."

City of Milwaukee v. Cement Div., Nat'l Gypsum Co., 515 U.S. 189, 195,

115 S.Ct. 2091, 132 L.Ed.2d 148 (1995).  The Court finds and concludes

that an award of prejudgment interest as to the award for reimbursement of

tuition and related expenses is required to fully compensate the Petruks in this case.

The amount of prejudgment interest to be awarded on a federal claim is controlled by federal law.  See Fox v. Fox, 167 F.3d 880, 884 (4th Cir. 1999).  Absent a statutory mandate, the rate of prejudgment interest to be awarded is matter left to the discretion of the Court.  Id. (citing Quesinberry v. Life Ins. Co. of N. Am., 987 F.2d 1017, 1030-31 (4th Cir. 1993) (en banc)).  In determining the rate of such interest, it is proper for the Court to look to state statutory interest rates.  See Quesinberry, 987 F.2d at 1031; Smith v. Am. Int'l Life Assurance Co. of New York, 50 F.3d 956, 958 (11th Cir. 1995).  The statutory interest rate in North Carolina is 8 percent per annum, N.C. Gen. Stat. § 24-1, and the Petruks ask the Court to award them prejudgment interest at that rate.  The Court finds 8 percent per annum to be an appropriate and reasonable rate and therefore awards the Petruks prejudgment interest at that rate, calculated simply, from March 16, 2006 (the date that the Petruks filed their due process petition in the North Carolina Office of Administrative Hearings) through the date of entry of Judgment.  See, e.g., Quesinberry, 987 F.2d at 1032 n.13 ("pre-judgment

interest should normally accrue at a simple rate of interest rather than compound").

The Petruks also request an award of post-judgment interest. Title 28 of the United States Code, Section 1961, provides for post-judgment interest on "any money judgment in a civil case recovered in a district court," calculated from the date of the entry of the judgment. 28 U.S.C. § 1961(a). "The phrase 'any money judgment' in § 1961(a) includes a judgment awarding attorney's fees and other costs." Holbrook v. Dist. of Columbia, 305 F.Supp.2d 41, 48 (D.D.C. 2004). Accordingly, the Court will award the Petruks post-judgment interest, calculated as specified in 28 U.S.C. § 1961(a), on the Petruks' entire award, including the award of attorney's fees and the award of prejudgment interest. See Quesinberry, 987 F.2d at 1031.

## O R D E R

Accordingly, **IT IS, THEREFORE, ORDERED** that the Plaintiffs shall have and recover of the Defendant the sum of **EIGHT THOUSAND, EIGHT HUNDRED AND FORTY-SIX DOLLARS AND NINETY-SIX CENTS**

($8,846.96) for reimbursement of private school tuition and related transportation expenses for the 2004-05 school year and the 2005 ESY.

**IT IS FURTHER ORDERED** that the Plaintiffs' Motion for Attorney's Fees and Costs [Doc. 20] is **GRANTED**, and the Plaintiffs shall have and recover of the Defendant the sum of **FIFTY-NINE THOUSAND, EIGHT HUNDRED AND ONE DOLLARS AND SEVENTY-ONE CENTS** ($59,801.71) in attorney's fees and costs; prejudgment interest, as to the $8,846.96 reimbursement award only, for the period of March 16, 2006 through the date of entry of Judgment at the rate of eight percent (8%) per annum; and post-judgment interest on the entire award from the date of entry of Judgment until paid in full at the rate specified in 28 U.S.C. § 1961.

A Judgment consistent with this Memorandum of Decision and Order shall be entered simultaneously herewith.

**IT IS SO ORDERED.**

Signed: April 1, 2010

Martin Reidinger
United States District Judge